IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3103-F

| | |
|---|---|
| DONALD F. GROAH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| ALVIN W. KELLER, Jr., *et al.*, | ) |
| | ) |
| Defendants. | ) |

Before the court are the motions to dismiss (D.E. # 30, 35) of all defendants in this matter. Plaintiff is an inmate in the custody of the State of North Carolina who filed suit under 42 U.S.C. § 1983, complaining about the alleged deliberate indifference of defendants to plaintiff's serious medical needs while he was incarcerated at Lumberton Correctional Institution. The defendants are divisible into two groups, one consisting of several officials and employees of the North Carolina Department of Public Safety, Division of Adult Corrections (collectively, "DAC defendants"), and the other consisting of defendant Dr. Ron Bell, a physician who provided medical services at Lumberton. All defendants contend that the complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure due to plaintiff's failure to state a claim upon which relief could be granted. See DAC Defs.' Mot. To Dis. [D.E. # 30] 1; Bell Mot. To Dis. [D.E. # 35] 1. In addition, all defendants assert that they are entitled to qualified immunity in this action. For

1

the reasons that follow, the court will grant the motions to dismiss.[1]

## DAC DEFENDANTS' MOTION TO DISMISS

The DAC defendants contend that plaintiff has failed to state a claim upon which relief could be granted as to any of them. The court will first review plaintiff's factual allegations. The complaint describes instances in which plaintiff alleges he was deprived of adequate medical care despite his serious medical needs. For example, plaintiff alleges that on February 7, 2011, he declared a medical emergency and was eventually made to wait in an "exercise cage" in the "segregation unit" for several hours without access to his medication or any medical observation or treatment. Compl. [D.E. # 7-1] ¶ 16. Plaintiff alleges that at various times during the course of the day he complained to correctional officers about his pain, but was not given his medication until 1:30 pm, after 8.5 hours of deprivation despite high blood pressure readings, and with no access to a toilet or drinking water. Id. at ¶ 24.[2] Plaintiff then alleges that when he finally saw Dr. Bell after receiving his medication, Dr. Bell only casually spoke to him about his problem and did not conduct a physical examination. Id. at ¶ 25.

Plaintiff also complains that, while he was held in the "segregation unit" for nine days in February of 2011, he was allowed to check his blood sugar only three times, despite his informing

---

[1] Plaintiff has also filed two motions requesting the appointment of counsel [D.E. # 38, 40]. Because there is no constitutional right to the appointment of counsel in civil cases, and because the court finds that plaintiff has failed to state a claim upon which relief could be granted, the court will deny plaintiff's motions to appoint counsel.

[2] The only persons plaintiff's allegations arguably implicate in this alleged delay and failure-to-treat include Nurse Nance, Nurse Jones, Officer Tucker, Officer Hunt, and some unnamed nurses. See Compl. [D.E. # 7-1] ¶¶ 12-24. None of these individuals are named as defendants in this action.

2

various officers, none of whom are defendants in this suit,[3] that he needed to be able to check his sugar more regularly. Id. at ¶¶ 26-29. Plaintiff also appears to complain about the fact that he was placed in segregation, that he was not released from segregation sooner, and that he missed some medical appointments while in segregation. Id. at ¶ 30-33. Plaintiff then complains generally about the purported deficiency of the staff and facilities at Lumberton to accommodate inmates designated for "medical observation." Id. at ¶ 34-36.

Plaintiff next alleges that he was again placed in medical segregation on February 18, 2011, after he "blacked-out." He was there for three days and, as of May 6, 2011, had not seen any medical personnel regarding that episode. Id. at ¶ 37. Plaintiff alleges that he has 20-23 "outstanding sick call" requests. Id. at ¶ 38. Plaintiff also alleges that after his blood sugar level dropped on March 4, 2011, he declared a medical emergency and was seen by Nurse Jones, but that Nurse Jones, who is not a defendant, did not take plaintiff's vital signs pursuant to protocols, did not treat him for his blood sugar, and did not respond to plaintiff's complaint about "chronic untreated back pain." Id. at ¶¶ 41-42. Finally, plaintiff alleges that he wrote letters to defendants Thomas, Taylor, Keller, and Smith, but that none of these defendants responded. Id. at ¶¶ 43-45. Plaintiff does not specifically allege the date or content of any such letters.

Plaintiff concludes his allegations by summarizing his claims as follows:

> The "deliberate indifference" to plaintiff's medical needs; the "abuse of power" exhibited in wrongfully housing plaintiff in a "disciplinary segregation" unit setting, the subjection of plaintiff to unwarranted disciplinary rules, regulations, and "deprivation of plaintiff's rights of social interaction" with others like custodial and physical activity status, and "deprivation of freedom" to move about the prison

---

[3] The officers and other personnel alluded to by plaintiff in conjunction with these allegations are Officer Harrell, Nurse Nance, Officer Leggett, Captain Locklear, and Lieutenant Cogdale.

3

facility unencumbered (but in compliance with state and Lumberton Correctional Institution Inmate "Rules and Regulations), violated plaintiff's rights and constituted "cruel and unusual punishment" a "due process violation" under the 5th, 8th, and 14th Amendments to the United States Constitution.

Id. at ¶ 47.

In pertinent part, the DAC defendants argue that "the complaint fails to state a claim against these named Moving Defendants in their individual capacities because none of them is alleged to have had any direct involvement in the events at issue in the complaint. Without direct involvement, Plaintiff's allegations are nothing more than an attempt to hold these managerial officials responsible under a theory of *respondeat superior*, which is not allowed under Section 1983." DAC Defs.' Supp. Mem. [D.E. # 31] 3. The DAC defendants also assert that, to the extent the complaint may be construed as alleging that they are liable in their capacities as supervisors, plaintiff still has failed to state a claim because he "has not alleged that any of them had actual or constructive knowledge of a pervasive and unreasonable risk; that any were indifferent to, or tacitly authorized, any offensive practice; or that their indifference (had it even been alleged) in any way caused Plaintiff's injuries." Id. at 9. Plaintiff has failed to file a cogent response to the DAC defendants' motion. His response simply states, in its entirety, that granting the DAC defendants' motion "would be a miscarriage of justice. I was trying to get help from all of these defendants. I am in a wheelchair for the rest of my life because of this." Pl.'s Resp. [D.E. # 34] 1.

When subjected to a Rule 12(b)(6) motion, a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is *plausible* on its face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir.2008) (emphasis in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Supreme Court in Twombly upheld a Rule 12(b)(6) dismissal because

4

the complaint failed to allege facts sufficient to show a claim was plausible rather than merely conceivable. See Monroe v. City of Charlottesville, Va., 579 F.3d 380, 386 (4th Cir.2009), cert. denied, 130 S.Ct. 1740 (2010). Accordingly, while a reviewing court must "accept as true all well-leaded allegations and view the complaint in the light most favorable to the plaintiff, Philips v. Pitt County Memorial Hosp., 572 F.3d 176, 180 (4th Cir. 2009), the court still "must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level." Simmons v. United Mortg. and Loan Inv., LLC, 634 F.3d 754, 768 (4th Cir.2011) (internal quotations and citations omitted). In doing so, "the court need not accept the legal conclusions drawn from the facts, and need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Monroe, 579 F.3d at 385–86 (quotation marks and alteration marks omitted).

Plaintiff claims that the DAC defendants were deliberately indifferent to his serious medical needs. Such claims fall under the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Plaintiff must plausibly allege a "deliberate indifference to [his] serious medical needs." Id. "[T]he need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). A "'serious ... medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)). "Deliberate indifference is a very high standard–a showing of mere negligence will not meet it." Grayson, 195 F.3d at 695. When the plaintiff complains that defendant physicians were deliberately

5

indifferent despite rendering treatment, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). However, "mere delay or interference can be sufficient to constitute a violation of the Eighth Amendment." Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009).

Even construing plaintiff's allegations liberally, as this court is required to do, the court finds that plaintiff has failed to allege any plausible and non-speculative claim for deliberate indifference against any of the DAC defendants named in the complaint. As argued by defendants and demonstrated by the court's summary of plaintiff's factual allegations, plaintiff has failed to allege that any of the DAC defendants were personally involved in the events described in the complaint. Two of the named DAC defendants, D. Mcleod-Duncan and Pat Chavis, do not appear in any of the factual allegations in the complaint. Four other DAC defendants, Keller, Smith, Thomas, and Taylor, are referred to only in plaintiff's allegations that he wrote these defendants at unspecified times regarding unspecified matters. See Compl. ¶¶ 43-45. Finally, defendant Nurse Locklear is referenced in the complaint only indirectly, as allegedly having told Captain Locklear that she could not tell Captain Locklear why some of plaintiff's sick call requests did not receive responses. Id. at ¶ 39. Given that the DAC employees plaintiff actually alleges caused him to suffer are not named as defendants, and that several higher ranking DAC defendants are named, the court must conclude that plaintiff alleges the DAC defendants are liable on a theory of *respondeat superior*. However, any such theory must fail. "In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has not application under this section." Wright v.

6

Collins, 766 F.2d 841, 850 (4th Cir. 1985) (quotation omitted).

Because plaintiff has failed to allege that DAC defendants were personally involved in the deprivations which plaintiff has alleged,[4] and because any assertion of liability predicated on *respondeat superior* fails, the only possible remaining theory of liability is that the DAC defendants are liable as supervisors. There are three requirements to impose § 1983 liability on supervisors:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Randall v. Prince George's County, Md., 302 F.3d 188, 206 (4th Cir. 2002) (quotations omitted). Under the first prong, the subordinates' conduct must be "pervasive," "meaning that the conduct is widespread, or at least has been used on several different occasions." Id. Hence, a plaintiff will not satisfy the deliberate indifference standard "by pointing to a single incident or isolated incidents[.]" Id. Rather, at a minimum, the plaintiff must demonstrate that the supervisor exhibited "continued inaction in the face of documented widespread abuses." Id. Given plaintiff's failure to better describe the content of any of the correspondence he allegedly sent to the supervisory DAC defendants, and his failure to allege that he alerted any of these defendants to the conduct of their subordinates on more than one occasion, he has failed to plausibly allege that they even had knowledge of a "pervasive" risk of harm to him, or that they exhibited "continued inaction" in

---

[4] The only arguable allegation of personal involvement by any of the individually-named DAC defendants is plaintiff's allegation about Nurse Locklear's statement to Captain Locklear (presumably no relation). See Compl. ¶ 39. Even if true, this allegation, standing alone, simply does not suffice to state a plausible, non-speculative claim of deliberate indifference on the part of Nurse Locklear.

7

response to his complaints of supposed "widespread abuses." Moreover, even if plaintiff did advise the supervisory DAC defendants of the incidents in February and early March of 2011 in which he allegedly was denied prompt medical care and not properly treated for his low blood sugar, the allegations of the complaint do not support a conclusion that these were more than isolated incidents such that the supervisory DAC defendants somehow ignored "documented widespread abuses." Randall, 302 F.3d at 206. Accordingly, plaintiff has failed to state a viable claim against any of the supervisory DAC defendants in their supervisory capacities.

Because plaintiff has failed to state a claim upon which relief could be granted as to any of the DAC defendants, their motion to dismiss pursuant to Rule 12(b)(6) is due to be granted and the complaint dismissed as to those defendants.

### DEFENDANT DR. BELL'S MOTION TO DISMISS

Dr. Bell argues as follows:

Plaintiff's allegations about the single visit with Dr. Bell on or about February 9, 2011, do not state a claim for a constitutional violation. Plaintiff alleges, at most, that he believes Dr. Bell should have made different medical decisions during this treatment, such as taking his blood pressure. Plaintiff will be unable to succeed on any claim based only on his disagreement with Dr. Bell about the manner in which Dr. Bell conducted this examination.
    Additionally, Plaintiff cannot make out a claim based on any delays in his ability to obtain medical treatment. Mere delay without an allegation of serious harm caused by the delay is not enough to allege an Eighth Amendment violation. Further, Plaintiff admits that while he was in medical segregation in February 2011, it was the responsibility of *custody officers*, not medical staff, to ensure that Plaintiff was brought to the medical area for his medical appointments. Because Dr. Bell is one of the prison's health care providers and not a custody officer, he was without the power or authority to have caused any alleged constitutional violation based on Plaintiff's inability to see a doctor during his medical segregation.

8

Def. Bell's Supp. Mem. [D.E. # 36] 5-6 (emphasis in original) (citations omitted).[5]

As argued by Dr. Bell and discussed in the court's prior summary of plaintiff's factual allegations, plaintiff only alleges one instance in which he was seen by Dr. Bell. To reiterate, plaintiff's allegation is that, after declaring a medical emergency and being made to wait in segregation for approximately 8.5 hours, he was finally given his medication and then brought to see Dr. Bell while Dr. Bell was eating lunch. Compl. [D.E. # 7-1] ¶ 25. According to plaintiff, Dr. Bell only spoke with him about his condition rather than conducting an examination. Id. Plaintiff specifically complains that Dr. Bell failed to check his blood pressure, which was his "original concern." Id. Plaintiff does not describe the content of his discussion with Dr. Bell or what, if anything, Dr. Bell concluded from their discussion.

Even construing plaintiff's allegations liberally, the court cannot conclude that plaintiff has sufficiently alleged a plausible, non-speculative claim of deliberate indifference as to Dr. Bell. As Dr. Bell asserts, plaintiff has at most only alleged that he believes Dr. Bell should have checked his blood pressure during their encounter. However, plaintiff does not allege that Dr. Bell's failure to check his blood pressure or conduct a physical examination caused him any specific injury, especially considering his claim that he had already been suffering for hours with symptoms of high blood pressure before he was finally provided with his medication prior to seeing Dr. Bell. Given Dr. Bell's knowledge that plaintiff was given his medication just prior to their visit, the decision to

---

[5] To the extent plaintiff filed any response to Dr. Bell's motion to dismiss, it is even less useful than his response to the DAC defendants' motion. Plaintiff's only statement in response to Dr. Bell's motion reads simply, "I have no intention of letting any of the Defendants off on any of the charges," before listing the named defendants. See Pl.'s Sec. Resp. [D.E. # 39] 1. In short, plaintiff has failed to file any response to the motions to dismiss which cogently addresses the defendants' arguments that he has failed to state a claim.

9

speak with plaintiff rather than conduct a physical examination must be attributed to Dr. Bell's medical judgment. This decision, even if it could be impugned as negligent, does not rise to the level of deliberate indifference. See Miltier, 896 F.2d at 851 (remarking that, where the medical provider actually acts on the plaintiff's complaints, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness"). Nor has plaintiff alleged any facts indicating that the alleged 8.5 hour delay in providing him with his medications, during which he allegedly experienced continuous suffering, was the fault of Dr. Bell. Indeed, plaintiff's allegations make clear that others, including arguably "Nurse Jones," "Officer Tucker," unnamed "Segregation Officers," "Officer Hunt," and "Nurse Nance," none of whom are defendants in this action, were responsible for the delay he describes. Plaintiff has simply failed to allege that Dr. Bell was deliberately indifferent to his serious medical needs on February 7, 2011, or at any other time.

Because plaintiff has failed to state a claim upon which relief could be granted as to Dr. Bell, Dr. Bell's motion to dismiss pursuant to Rule 12(b)(6) is due to be granted.

## CONCLUSION

For all of the reasons given above, it is ORDERED that the DAC defendants' motion to dismiss [D.E. # 30] and Dr. Bell's motion to dismiss [D.E. # 35] are GRANTED. The complaint [D.E. # 7-1] is DISMISSED as to all defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff's motions for appointment of counsel [D.E. # 38, 40] are DENIED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED. This the 1st day of February, 2013.

／s／ James C. Fox
JAMES C. FOX
Senior United States District Judge